

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| TROY ROKUSEK, | CIV 16-4056 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| CODY JANSEN, individually, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff, Troy Rokusek ("Rokusek"), filed this action under 42 U.S.C. § 1983 against Defendant, Cody Jansen ("Jansen"), alleging a violation of Rokusek's Fourth Amendment right to be free from excessive force. Jansen filed a Motion for Summary Judgment, claiming that he is entitled to qualified immunity from this claim. (Doc. 43.) Rokusek opposes the motion. Having carefully considered the entire record, the Court will deny Jansen's motion for summary judgment.

## BACKGROUND

This excessive force case arises out of Rokusek's arrest for suspicion of driving under the influence on April 14, 2015. Rokusek was traveling eastbound on South Dakota Highway 50, a few miles west of Vermillion, South Dakota, when State Trooper Jansen stopped him. There were no problems at the scene of the traffic stop and arrest, or during the drive to the Clay County Jail. Rokusek agreed to provide a blood sample without a search warrant and Jansen took him to a garage attached to the Clay County Courthouse, called the "sally port." Jansen removed Rokusek's handcuffs. Things went smoothly until Rokusek requested to have his blood drawn in a more sanitary environment by a different medical technician than the one in the sally port. When Rokusek refused to stand up so Jansen could handcuff him and get a search warrant for the blood draw, Jansen pulled Rokusek up and pinned his arms behind his back in a "double chicken wing" restraint hold, and then Jansen threw Rokusek face-first to the concrete floor with his arms still behind his back, causing injuries.

In the Amended Complaint, Rokusek states four causes of action. The first is the § 1983 civil rights claim that Jansen used excessive force. The other three are state law claims for assault, battery and intentional infliction of emotional distress. Jansen contends that Rokusek's section 1983 action against him is barred by the doctrine of qualified immunity. Pursuant to an agreement between the parties, this Court ordered a stay of discovery pending a decision on qualified immunity. (Doc. 49.)

## FACTS

Viewed in the light most favorable to Rokusek, the record establishes the following facts.[1] On or about 11:45 p.m. on April 14, 2015, Trooper Jansen initiated a traffic stop with Rokusek on South Dakota Highway 50, a few miles west of Vermillion, South Dakota. Jansen performed a field sobriety test on Rokusek. Finding Rokusek to be impaired, Jansen placed Rokusek under arrest. Rokusek was cooperative throughout this process.

Jansen drove Rokusek to the Clay County Courthouse, and requested Rokusek's consent for a blood sample, to which Rokusek agreed. At the courthouse, Rokusek was placed inside of a garage used by law enforcement Troopers called the "sally port." The sally port was under video surveillance, and the interactions between Rokusek and Jansen were caught on the video (hereinafter "Sally Port Video").[2] There is no audio.

After Rokusek consented to the blood draw, Jansen removed his handcuffs. Rokusek was seated in a chair in the sally port. It was close to 1:00 a.m. on April 15 at this point. The medical

---

[1] These facts are taken from Jansen's Statement of Undisputed Material Facts and Plaintiff's Statement of Material Facts. (Docs. 44 and 52.) Both parties submitted, and the Court reviewed, excerpts from the depositions of Jansen and Rokusek, and a copy of the video from the sally port showing the interactions between Rokusek and Jansen.

[2] Rokusek points out that there are gaps of time missing in the Sally Port Video, such as from 12:55:17 a.m. to 12:55:35 a.m. In the Affidavit of the Sheriff of Clay County, Andy Howe, he explains that, in order to save drive space, the video camera only records if movement is detected. (Doc. 59-1 at ¶ 3.) Thus, recording may cease during a booking if the arrestee is standing still and the officer is writing or typing. (*Id.* at ¶ 4.) According to Sheriff Howe, "When the camera ceases to record due to inactivity, the timer continues to run. Once the camera detects movement again and begins recording, the time appears to jump forward through the time of inactivity." (*Id.* at ¶ 5.)

2

technician who would perform the blood draw, Staci Wuestewald, was present when Jansen and Rokusek arrived at the sally port. She was pregnant at that time.

Upon notification that Ms. Wuestewald would be performing the blood draw, Rokusek changed his mind about consenting to the blood draw at the sally port because he thought it was unsanitary and that the blood draw should be done at the hospital. Jansen informed Rokusek that he would obtain a search warrant and the draw would be performed in the sally port.

Jansen asked Rokusek to stand up to be placed in handcuffs again. Rokusek did not comply, despite Jansen's three repeated requests. After Rokusek disregarded Jansen's third request to stand, Jansen took hold of Rokusek by the arm and pulled him up into a standing position. Jansen placed his arms between Rokusek's arms and back so as to not lose control of Rokusek.[3] Jansen called this position the "double chicken wing." A double chicken wing is not taught by the South Dakota Highway Patrol. The Highway Patrol reprimanded Jansen for using this technique on Rokusek:

> ...You responded by "trapping both of his arms behind his back and forcing him to the ground while you maintained control of his arms behind his back. Rokusek's face struck the floor causing an injury that required two stitches and the loss of teeth.
> The method used to take Rokusek to the ground is not taught by the Highway Patrol or any law enforcement training provided to you by the Highway Patrol. The technique used to take Rokusek to the ground did not allow him any opportunity to protect himself from injury. Further, the Highway Patrol does teach tactics on how to take a resistant subject to the ground while maintaining control of the subject. These proper techniques of pain compliance and balance displacement are an effective means of controlling a resistant subject while minimizing potential for injury. Cody, you are much larger than Mr. Rokusek who was extremely intoxicated. Considering your training, size, and the level of resistance from Rokusek, your actions to control him were not reasonable and significantly increased the potential for injury.

*See* Doc. 57-4. Jansen testified that he knew at the time of the incident that the double chicken wing was not a permissible technique. According to Jansen, he warned Rokusek multiple times to stop

---

[3] Rokusek testified that Jansen struck him in the head with his forearm before placing him in the double chicken wing position, but that does not show up on the Sally Port Video.

3

resisting while holding him in the double chicken wing. Rokusek denies that a warning was made. Jansen also testified that he had complete control over Rokusek while Rokusek's head was against the wall. Jansen testified that he is 6'4 and 220 pounds. Rokusek is 5'6 and weighs 135 pounds. The size difference between the men is apparent in the Sally Port Video.

At one point while holding Rokusek, Jansen says he felt Rokusek push back against him, so Jansen took him to the ground. Rokusek denies making any effort to free himself. It is not clear from the Sally Port Video whether Rokusek pushed back against Jansen, but the Sally Port Video shows that Rokusek's head remained against the wall until Jansen threw him to the ground. Jansen slammed Rokusek to the ground while he was in the double chicken wing position, unable to protect his head and face. On the Sally Port Video, blood can be seen pooling near Rokusek's mouth on the floor. He lost two teeth and his lip was lacerated.

Jansen handcuffed Rokusek and sat him on a bench. Jansen had dispatch call an ambulance, and a blood draw was performed at the hospital. Rokusek testified that he will require dental implants for the two lost teeth.

## DISCUSSION

Qualified immunity protects officers from liability in a section 1983 case "unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). When determining whether an official is entitled to qualified immunity at the summary judgment stage, "the official's conduct must be viewed through the prism of Rule 56 – that is, [the court] must take as true those facts asserted by plaintiff that are properly supported in the record." *Tlamka v. Serrell*, 244 F.3d 628, 632 (8th Cir. 2001). The Court "may not resolve genuine issues of material fact in [Jansen's] favor at the summary judgment stage." *Tatum v. Robinson*, 858 F.3d 544, 552 (8th Cir. 2017).

In the Eighth Circuit, the test for qualified immunity has two parts: (1) whether there is sufficient evidence the officer "violated a constitutional right," and (2) whether the "constitutional

right [the officer violated] was so 'clearly established' at the time of the alleged violation that a reasonable officer would have known that his conduct was unlawful." *Rohrbough v. Hall*, 586 F.3d 582, 585 (8th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If the answer to either of the two questions is no, then the officer is entitled to qualified immunity. *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010). The Court must apply the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

A. <u>Step One: Violation of a Constitutional Right</u>

42 U.S.C. § 1983 is "not itself a source of substantive rights." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation and internal quotation marks omitted). As a result, a plaintiff must "identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Here, Rokusek claims that Jansen violated his Fourth Amendment right to be free from unreasonable seizure. Fourth Amendment excessive force standards apply to incidents "occurring during the transportation, booking, and initial detention of recently arrested persons." *Chambers v. Pennycook*, 641 F.3d 898, 905 (8th Cir. 2011); *see also Hicks v. Norwood*, 640 F.3d 839, 842 (8th Cir. 2011) ("It is settled in this circuit that the Fourth Amendment's 'objective reasonableness' standard for arrestees governs excessive-force claims arising during the booking process").

"To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown*, 574 F.3d at 496 (citations and internal quotation marks omitted). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. This allows "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

When evaluating the reasonableness of an officer's use of force, a court considers "the totality of the circumstances and 'the severity of the crime at issue, the immediate threat the suspect poses to the safety of the officer or others, and whether the suspect is actively resisting or attempting to evade arrest by flight.'" *Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009) (citation omitted). Force is "'least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.'" *Johnson v. Carroll*, 658 F.3d 819, 827-28 (quoting *Brown*, 574 F.3d at 499). "A court may also evaluate the extent of the suspect's injuries, as well as standard police procedures." *Mann v. Yarnell*, 497 F.3d 822, 826 (8th Cir. 2007) (internal citations omitted); *see also Chambers*, 641 F.3d at 906 ("The degree of injury is certainly relevant insofar as it tends to show the amount and type of force used."); *Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995) ("Although these 'police department guidelines do not create a constitutional right,' they are relevant to the analysis of constitutionally excessive force.") (citations omitted). An officer's underlying intent or motivation is not relevant to an objective reasonableness analysis. *Graham*, 490 U.S. at 397.

Viewing the evidence in the light most favorable to Rokusek, the Court cannot conclude that Jansen's use of force was objectively reasonable as a matter of law. Rokusek was an unarmed arrestee for a nonviolent crime who did not threaten Jansen, did not attempt to run from him, and did not behave aggressively toward him or Ms. Wuestewald. The Court cannot conclude that Rokusek failed to obey Jansen's verbal commands while in the chicken wing hold because, according to Rokusek, none were given. It is also not clear that Rokusek pushed back against Jansen. It is more clear that Jansen, at 6'4 and 220 pounds had physical control over the inebriated, much smaller Rokusek before he threw him to the ground. Furthermore, a double chicken wing is not authorized or taught by the South Dakota Highway Patrol, and a reasonable officer would have known that such a hold would prevent Rokusek from protecting his face from injury when he was thrown to the ground. Finally, a laceration and the loss of two teeth are not *de minimis* injuries. The Court finds that there are genuine issues of material fact regarding whether the amount and degree of force used by Jansen surpassed what was objectively necessary in the situation at hand.[4] Thus,

---

[4]Whether Jansen is entitled to qualified immunity for his alleged use of excessive force is an inquiry distinct from the merits of Rokusek's excessive force claim. *See Saucier v. Katz*, 533 U.S.

Jansen is not entitled to qualified immunity on this ground. *See, e.g., Montoya v. City of Flandreau*, 669 F.3d 867 (8th Cir. 2012) (reversing district court's conclusion that force used by sweeping plaintiff's leg out from under her was objectively reasonable); *Rohrbough*, 586 F.3d at 587 (holding that, at the summary judgment stage, granting qualified immunity "is not appropriate where ... a dispute remains regarding facts material to the qualified immunity issue").

Jansen relies on *Ehlers v. City of Rapid City*, 846 F.3d 1002 (8th Cir. 2017), as an example of a case where the Eighth Circuit concluded that an officer did not violate the Fourth Amendment by taking a plaintiff to the ground after he ignored multiple requests from the officer. But Jansen did not encounter the noncompliance or the kinds of hazards faced by the officer in *Ehlers*. The officer in *Ehlers* was trying to arrest the completely unrestrained plaintiff, telling him to put his hands behind his back. Instead, the plaintiff walked away from the officer, passing him "closely" while ignoring his commands. The officer executed a spin takedown and the plaintiff landed on his back. In contrast, prior to being thrown face-first to the ground, Rokusek was completely restrained in a chicken wing hold by the much larger Jansen. Viewing the record in the light most favorable to Rokusek, Jansen did not give any verbal commands that were ignored by Rokusek while he was in the chicken wing hold. For these reasons, the Eighth Circuit's holding in *Ehlers* does not affect this Court's finding in the present case that genuine issues of material fact exist regarding whether the amount and degree of force used by Jansen exceeded what was objectively necessary.

B. <u>Step Two: Clearly Established Constitutional Right</u>

Having determined that Rokusek has established a violation of a constitutional right, the Court next must ask whether Jansen is nonetheless entitled to qualified immunity on the ground that the law was not clearly established at the time of the incident.

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008)

---

194, 204-06 (2001). While a jury may credit Jansen's assertions that he feared for the safety of Ms. Wuestewald and her unborn child and disbelieve Rokusek at trial, the credibility assessments belong to the jury. *See Kukla v. Hulm*, 310 F.3d 1046, 1050 (8th Cir. 2002).

7

(citation omitted). "[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, 'even though the very action in question has [not] previously been held unlawful.'" *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)(quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)). Rokusek's right to be free from excessive force is clearly established. *See Chambers*, 641 F.3d at 908 (holding that an arrestee's right to be free from excessive force causing more than "de minimis injuries" was clearly established under the Fourth Amendment's prohibition against unreasonable seizures of the person). Rokusek is not required to point to precedent clearly establishing that Jansen's precise conduct would violate his general right to be free from excessive force. *See Winslow v. Smith*, 696 F.3d 716, 738 (8th Cir. 2012) (holding that the "unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances") (quoting *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 531 (8th Cir. 2009)). This Court finds that the general constitutional principles against excessive force that were clearly established at the time of the incident between Jansen and Rokusek were such as to put a reasonable officer on notice that putting Rokusek in a double chicken wing hold and throwing him face first to the ground, under the circumstances presented by Rokusek, was excessive force in violation of clearly established law.

Jansen argues that Rokusek lacked a clearly established right "in not being taken to the ground after noncompliance with requests to stand up to be cuffed and resisting efforts to be cuffed once standing." (Doc. 46 at 5.) Jansen relies on an Eighth Circuit case where the plaintiff was pepper sprayed after arguing with an officer who suspected the plaintiff of shoplifting. *See Tatum v. Robinson*, 858 F.3d 544, 551 (8th Cir. 2017). The officer warned the suspect that if he did not calm down he would spray him with pepper spray. The suspect kept arguing and the officer sprayed him in the face with pepper spray. The Eighth Circuit found the officer's actions were unreasonable, but that the suspect did not have a sufficiently definite right in not being pepper sprayed after arguing with the officer and being warned. According to the Eighth circuit, "Other cases decided before April 29, 2014, indicated an officer might be justified in using pepper spray (or similar force) on an angrily arguing individual after giving a warning." *Tatum*, 858 F.3d at 551. Unlike in *Tatum*, there are no cases decided before (or after) April 14-15, 2015 indicating an officer might be justified using the chicken wing technique while throwing a non-fleeing, nonviolent arrestee to the ground without any warning despite having control over him.

The general law against excessive force that was clearly established at the time of the incident was sufficient to put a reasonable officer on notice that taking down Rokusek under the facts as asserted by Rokusek was excessive force. *See, e.g., Montoya*, 669 F.3d at 872 (holding that contours of right to be free from excessive force were "sufficiently clear to inform a reasonable officer in Officer Hooper's position it was unlawful for him to perform a 'leg sweep' and throw to the ground a nonviolent, suspected misdemeanant who was not threatening anyone, was not actively resisting arrest, and was not attempting to flee").

## CONCLUSION

The Court denies Jansen qualified immunity because there is a genuine dispute of material fact whether the type and amount of force used by Jansen was objectively reasonable in light of all of the relevant factors, and Rokusek's constitutional right to be free from excessive force was clearly established. Accordingly,

IT IS ORDERED:

1. That defendant Cody Jansen's Motion for Summary Judgment, Doc. 43, is denied.

2. That the stay of discovery ordered in Doc. 49 is lifted.

3. That on or before Friday, September 29, 2017, the parties shall advise the Court in writing of the date they anticipate completing discovery.

Dated this 26th day of September, 2017.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By: _____, Deputy
(SEAL)

9